UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                     Case No. 13-cr-20704

v                                      Honorable Thomas L. Ludington

D-2    PAUL ALLEN ANDERSON,

                Defendant.

_____/

## ORDER DENYING MOTION TO WITHDRAW GUILTY PLEA

On June 18, 2014—after six days of trial—Defendant Paul Allen Anderson pleaded guilty to five charges: (1) Conspiracy to Possess with Intent to Distribute Cocaine Base, Cocaine, and Heroin, 21 U.S.C. §§ 846 and 841(a)(1); (2) Possession with Intent to Distribute Cocaine Base, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); (3) Distribution of Heroin, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (4) Distribution of Cocaine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and Use of a Communication Facility in Facilitating the Commission of a Felony, 21 U.S.C. § 843(b).   In exchange for pleading guilty to the charges, the Government agreed to recommend that Anderson be granted a reduction of three levels for acceptance of responsibility under United States Sentencing Guidelines § 3E1.1(a) and (b).

An initial presentence report provided to counsel reflected that, in light of Anderson's offense level and criminal history category, the advisory guideline range was 360 months to life—with a three point reduction for his acceptance of responsibility for the offenses.   On January 6, 2015, Anderson's counsel filed the instant motion to withdraw his pleas of guilty.   Anderson claims that he should be allowed to withdraw his guilty plea for three reasons: (1) his trial attorney erroneously predicted that Anderson's sentencing guidelines would be much lower if he pleaded guilty; (2) he was promised that he would receive only 10 years for pleading guilty; and (3) that the Government's promise of a three-point reduction was illusory, because even with the

reduction, Anderson's guideline range (360 months-life) remained unchanged. Anderson's claims are unavailing, and his motion to withdraw his guilty plea will be denied.

## I.

On September 25, 2013, the Government filed an indictment charging Anderson and three co-conspirators with various charges related to their conspiracy to sell drugs such as cocaine base, cocaine, and heroin. Anderson acknowledged that Count 1 of the indictment, Conspiracy to Possess with Intent to Distribute Cocaine Base, Cocaine, and Heroin, could result in "Imprisonment for 10 years to life". Acknowledgment of Indictment 1, ECF No. 23.

## A.

In March 2014, two of Anderson's co-conspirators accepted plea agreements. *See* March 20, 2014 Plea Agreement, ECF No. 53; March 31, 2014 Plea Agreement, ECF No. 59.

On April 8, 2014, the Court conducted a final pretrial conference with respect to the two remaining defendants: Anderson and Tradvis Demarr Williams. At the conference, the Government reviewed the plea offer that it had extended to Anderson: 334 to 336 months' imprisonment. This sentencing range involved a reduction for acceptance of responsibility and did not include aggravating factors, such as points for leadership or for obstruction. Moreover, the range was based on lower drug quantities and on a conspiracy that lasted for only six months.[1]

The Government then addressed the possible sentencing range if Anderson was convicted at trial. The Government noted that, based on the quantity of drugs involved, his role as a leader, and points for obstruction for threatening a witness, he would be at an offense level of 45. That offense level, combined with Anderson's category VI criminal history, would result in a high sentencing range—though the Government acknowledged that it had not calculated the specific possible range.

---

[1] This information is taken from a transcript of the final pretrial conference. However, in the response to the motion and at the motion hearing, the Government clarified that it made *two* plea offers: "One plea agreement provided for a sentencing guidelines range of 324 to 405 months of imprisonment, and the second agreement provided for a guideline range of 235 to 293 months with a two point variance to 188 to 235 months of imprisonment based on the anticipated amendment to the drug sentencing guidelines." Resp. 3 n.1.

Anderson's counsel acknowledged that the plea offer had been extended and that he had reviewed the offer with Anderson. Anderson's counsel, however, indicated that Anderson did not want to accept the offer and preferred to exercise his right to a trial.[2]

The following day, on April 9, 2014, the Government filed a Superseding Indictment against the two remaining defendants. Superseding Indictment, ECF No. 68. The Superseding Indictment charged Anderson with the same crimes as those charged in the original indictment; however, the Superseding Indictment differed in that it identified the minimum quantities for each type of substance involved in the conspiracy in Count 1: 280 grams or more of cocaine base, 500 grams or more of cocaine; and 1 kilogram or more of heroin. *Id.* at 1-2. Once again, Anderson acknowledged that a conviction on Count 1 could result in "Imprisonment for 10 years to life". Waiver of Arraignment 1, ECF No. 79.

About a week after the Government filed the Superseding Indictment, Anderson's last remaining Co-Defendant, Tradvis Williams, entered into a plea agreement. ECF No. 75.

## B.

On June 11, 2014, Anderson's trial began. During the first six days of trial, five witnesses testified against Anderson—including his Co-Defendant, Tradvis Williams. On June 17, 2014, after the close of that day's proofs, Anderson met with counsel at the Bay County Jail. During the meeting, counsel expressed his belief that continuing with the trial was "suicide."[3] Mr. Escobedo therefore went to the prosecutor's office to determine whether a plea agreement could be reached.

According to Mr. Escobedo's testimony at the motion hearing, after meeting with Anderson he met with the AUSA assigned to the case and the case agent, Scott Nedoff. While the AUSA was out of the room, Mr. Escobedo asked the case agent if he believed that a ten-year sentence for Anderson would be "reasonable" or "fair." Mr. Nedoff indicated his personal belief

---

[2] At the time of the final pretrial conference, the Government had not yet extended a plea offer to Anderson's Co-Defendant, Tradvis Williams.

[3] At the motion hearing, Mr. Escobedo testified that it was Anderson who first suggested that continuing with the trial would be suicide, and that he merely agreed with Anderson. Anderson, however, testified that he simply asked Mr. Escobedo whether it would be suicide to continue.

that a ten-year minimum sentence would be reasonable. Both Mr. Escobedo and Mr. Nedoff testified that Nedoff did not make any promises that Anderson would receive a ten-year sentence as part of the plea agreement.

After the AUSA agreed to accept a plea from Anderson, Mr. Escobedo returned to the Bay County Jail to discuss the plea agreement with Anderson. According to Anderson's testimony, Mr. Escobedo promised that if Anderson entered into a plea agreement, he would receive only ten years' imprisonment.[4] Moreover, according to Anderson, Mr. Escobedo warned Anderson that if he told anyone about the promised ten-year sentence—including the trial court at the plea colloquy—then he would not receive a ten-year sentence. Based on the "promised" ten-year sentence, Anderson signed the plea agreement.

## C.

The next day, the trial court conducted a plea colloquy:

| The Court: | During the course of proofs, there have been ongoing discussions between the defendant and the government. My understanding is that the gentleman wishes to tender a plea to the charged counts. Is that accurate, [Defense Counsel]? |
| --- | --- |
| Mr. Escobedo: | That is correct, your Honor. |
| The Court: | May I understand that you have had a chance to spend some time not only with [the AUSA] but also with Mr. Anderson in considering that decision? |
| Mr. Escobedo: | Yes, your Honor. I spent a significant amount of time yesterday after court with Mr. Anderson and again some time this morning discussing a number of things. |
| The Court: | Okay. Mr. Anderson, I just want to confirm, you have had a chance to review the agreement that we will be giving some attention to here in a couple of minutes and a chance to talk extensively with [Defense Counsel]? |
| Anderson: | Yes, sir, I have. |

Guilty Plea 5.

---

[4] Mr. Escobedo testified during the hearing that he never made such a promise to Anderson, and that no one else had promised Anderson a ten-year sentence.

The plea agreement explained that "Paul Allen Anderson agrees to plead guilty to all charges against him in the current indictment as alleged." Plea and Waiver of Rights 1, ECF No. 92. The plea agreement did not provide an estimated sentence range, but it noted that "Defendant understands that the government will seek enhancements, such as an upward adjustment for role in the offense and for obstruction of justice as part of the defendant's sentence." *Id*. Moreover, Anderson agreed to waive his right to challenge his convictions. *Id*. at 2. In exchange, Anderson would "be granted a reduction of three levels for acceptance of responsibility under USSG §3E1.1(a) and (b). *Id*. at 1. This was the only promise the Government made to Anderson.

The Court placed Anderson under oath, reviewed the terms of the agreement, the minimum and maximum punishments and the factual basis, found that Anderson was entering the guilty plea knowingly, intelligently, and voluntarily, and accepted Anderson's guilty pleas.

After Anderson entered his guilty pleas, his Co-Defendants were sentenced: Co-Defendant Kimberly Ann Turcott on June 26, 2014; Co-Defendant Rachel Lee Winslow on August 19, 2014; and Co-Defendant Tradvis Williams on August 27, 2014. All three Co-Defendants were sentenced to terms of imprisonment.

### D.

About four months later, on October 10, 2014, Mr. Escobedo filed a motion for withdrawal, claiming "that there has been a breakdown in the attorney-client relationship such that it is in the interest of justice to allow undersigned counsel to withdraw . . . ." Mot. Withdraw 3. The motion further explained that Anderson had accused his attorney of coercion, ineffectiveness, and incompetence. *Id*. at 2-3.

On October 21, 2014, Anderson filed a *pro se* motion to withdraw his pleas of guilty. In the motion, Anderson elaborated on his accusations that Mr. Escobedo had coerced him into pleading guilty.

- 5 -

On October 30, 2014, the Court conducted a hearing on both motions.  At the hearing, Mr.

Escobedo provided some factual background on the events that led Anderson to enter guilty pleas

after six days of trial:

> Mr. Escobedo:  The way the plea came about, Your Honor, is that it was the evening before I think it was day seven of the trial, and I went over to the jail to meet with Mr.—Mr. Anderson, and we were preparing for trial and Mr. Anderson indicated to me, and these are his words, he said, "This is suicide, isn't it?"[5]  And I said, Paul, yes, it is.  It is suicide for us to keep going forward, but you have a right to a trial.

Transcript of Motion Hearing 5.

Anderson's counsel then explained the consequences of entering a guilty plea, given the

charges and Anderson's criminal history:

> Mr. Escobedo:  I said, if you—if you were to decide that you wanted to plead—and I'm paraphrasing to some extent, Your Honor.  I obviously don't have a transcript of our discussion.  So the conversation continued.  We talked about Rule 35.  We talked about potential cooperation prior to sentencing.  We talked about factors that might help improve his position with respect—or at the time of sentencing under Rule 35 sometime thereafter.
>
> We had a discussion with respect to his criminal history.  We talked about that.  We talked about the item—we talked about the evidence in the case, in particular the evidence surrounding the letter that was purported to have been written by Mr. Williams and the fact that the Government had—had an expert examine that letter and concluded that—that the writing of that letter had been—it was not Mr. Williams' writing but it belonged to someone else and the implication was to Mr. Anderson.

Motion Hearing 5-6.

Mr. Escobedo next alluded to conversation that both he and Anderson had had with the

Government's case agent; however, Anderson's counsel did not provide specifics:

> Mr. Escobedo:  So we had this discussion, and ultimately it was decided we'd go ahead and plead.  In addition to that, I had some

---

[5] According to Anderson's testimony at the October 30, 2014 hearing, he was using the word "suicide" not to refer to the fact that the case was not going well, but rather to the fact that his cell had been searched and that law enforcement had read his trial preparation notes.  Motion Hearing 18.

> discussion with the agent in this case, and we were talking about potential cooperation, etc.  Ultimately, ultimately, we got to the point, Mr. Anderson and I, where it was decided that he would tender a guilty plea, which is what happened the next day.
>
> And I believe he had some—Mr. Anderson had some discussion independent of his conversation with me I think with the agent in this case at some point.  I'm not exactly sure when.  I don't know if it was when his cell was searched or at what point; but, anyway, Mr. Anderson was of the opinion that—or felt that a sentence of 10 years would be appropriate and fair given his involvement in this particular incident.

Motion Hearing 6-7.

Mr. Escobedo then clarified that he had not made any promises to Anderson, but had instead warned him about the consequences of a jury conviction:

> Mr. Escobedo:    I indicated to him that we would—he would have the three level reduction for acceptance of responsibility, that I would talk with the Government about possible cooperation and maybe some consideration in that area, as well as the fact that he would have a year after his sentencing to consider a Rule 35 reduction for—for cooperation. . . .
>
> And that's where—that's where we left it, you know.  And there were no—no promises made to Mr. Anderson about a potential sentence.  I didn't threaten him or coerce him in any way or use duress in any way.
>
> What I did tell him, what I did tell him, is that if we were to continue to go forward with trial, and if there were determination made by the Court that the letter in question or the evidence in question had been manufactured by him, that he could be looking at some additional—potentially additional charges for obstruction of justice. . . .
>
> [I]n any event, I did explain to him the potential consequences of going forward with trial given the facts and the circumstances up to that point in the trial, particularly the evidence and the fact that he would not be receiving the three level reduction consideration for acceptance of responsibility.

Motion Hearing 7-8.

After Anderson's attorney finished, Anderson himself explained the factual basis for his

*pro se* motion:

> Anderson:
> [Defense counsel]'s telling me I'm at 188 to 235, but don't pay attention to that I'm going to get you 10 years and this was a promise that was made by Nedoff[, the case agent,] that he talked to because he said he went back to talk to Nedoff, and then he came back to me and that's when he gave me this sentencing table.
>
> This is why I took the plea, because I'm thinking I'm only getting 10 years.  This was coercion that was used by [defense counsel] and Scott Nedoff by telling me I was getting this plea . . . Like, okay, I thought you was going to get 10 years, and they told me you was getting 10 years, and we promised you that, but it looks like you're not getting that, you see what I'm saying.

Motion Hearing 12-13.

Mr. Escobedo then disputed some of Anderson's interpretation of the events:

> Mr. Escobedo:
> I remember some of what Mr. Anderson has indicated.  The context is a little different.  I had indicated to Mr. Anderson that he was looking at a 10-year mandatory minimum.  I told him that right from the very beginning.  When I—when I met with the AUSA and Mr. Nedoff at the office of the AUSA, I asked Mr. Nedoff, I said, how do you feel about a sentence with respect to Mr. Anderson?  He said, I think a 10 year, a 10-year minimum, would be an adequate sentence, would be an appropriate sentence given the circumstances of this case.
>
> . . .
>
> So I go back to the jail and I tell Mr. Anderson that I had this discussion with Mr. Nedoff and that he'd indicated to me that he thought the 10 year would be a –he would not have an objection to a 10 year sentence.  Now, I did tell Mr. Anderson that myself nor Agent Nedoff could—could promise him or agree to what the sentence would be, and I mentioned to him the only person that makes the determination is the judge.
>
> . . .
>
> Anyway, there was never a promise made to him that he would get 10 years.

- 8 -

Motion Hearing 14.

After hearing both Anderson and his counsel's testimony, the Court granted Mr.

Escobedo's motion to withdraw:

| | |
|---|---|
| The Court: | I am predisposed to letting—relieving [Defense Counsel] of representing you— |
| Anderson: | Uh-huh. |
| The Court: | --because in part you are saying he told you things that he says he didn't tell you. |
| Anderson: | I mean, it shows on—it shows on the paper itself. |
| The Court: | So we're going to have to deal with potentially those facts, and he's going to have—he's going to be explaining the events very differently than you— |
| Anderson: | Thank you. |
| The Court: | --so he's hardly in a position to be representative going forward. |

Motion Hearing 20.  The Court noted that the issue of whether to allow counsel to withdraw is

separate from the issue of whether Anderson should be allowed to withdraw his guilty pleas.

Therefore, the Court appointed Anderson new counsel and stated that the issue of whether to

permit withdrawal of the pleas was for a later time:

| | |
|---|---|
| The Court: | But to be clear, we'll appoint you other counsel.  We still got to sort our way through the events and make a determination of whether it's appropriate to permit you to withdraw your plea. . . . |
| | [B]ut [new counsel] will also review with you the potential consequences if we decide that there isn't merit to permitting you to withdraw your plea.  And they will discuss with you the consequences of your efforts to seek to withdraw your plea here.  That may have its own consequences.  But I think it's something that you probably ought to be well counseled about, and that person simply can't be [trial counsel] given the nature of the accusations you've made. |

Motion Hearing 21-22.  To give Anderson time to discuss his case with new counsel, the Court struck his *pro se* motion to withdraw his guilty plea.

**E.**

On November 12, 2014, Anderson was appointed new counsel, and on January 6, 2015, counsel filed a motion to withdraw Anderson's guilty pleas.  Counsel argued that Anderson should be permitted to withdraw his guilty plea because (1) Anderson was misled as to his sentencing guidelines and (2) the Government's three-point reduction promise was illusory.

**II.**

"A defendant does not have an absolute right to withdraw a guilty plea."  *United States v. Ellis*, 470 F.3d 275, 281 (6th Cir. 2006) (citations omitted).  Federal Rule of Criminal Procedure 11(d) provides the standard applicable for withdrawal of a guilty plea: "A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).

Because the Court has already accepted Anderson's guilty pleas, he must show a "fair and just reason" in order to withdraw his guilty pleas under Federal Rule of Criminal Procedure 11(d)(2)(B).  This rules is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'"  *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991).

Anderson carries the burden of proving that withdrawal of his guilty plea is justified, and the matter is left to the discretion of the district court.  *United States v. Catchings*, 708 F.3d 710, 717 (6th Cir. 2013).  In *United States v. Bashara*, the Sixth Circuit set forth a non-exclusive list of factors that should guide a district court in determining whether to allow a defendant to withdraw his guilty plea: (1) the amount of time that elapsed between the plea and the motion to withdraw

it; (2) the presence or absence of a valid reason for the failure to move for withdrawal earlier in the proceeding; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.  27 F.3d 1174, 1181 (6th Cir. 1994).  "[T]he government is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal."  *United States v. Goddard*, 638 F.3d 490, 495 (6th Cir. 2011) (quoting *United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987)).

Each *Bashara* factor will be analyzed to determine whether Anderson has demonstrated a fair and just reason for withdrawal of his guilty pleas as required by Federal Rule of Criminal Procedure 11(d)(2)(B) and whether withdrawal is warranted after balancing any fair and just reason and any prejudice to the government.

### A.

The first factor is the amount of time that elapsed between the pleas and the motion to withdraw them.  Anderson signed a plea agreement on June 18, 2014, after approximately six days of trial.  His first motion[6] to withdraw his pleas was filed on October 21, 2014.  Thus, approximately 120 days elapsed between the guilty pleas and his first attempt to withdraw his pleas.

The Sixth Circuit has denied motions to withdraw guilty pleas on the basis of delays far shorter than the delay in this case.  *See e.g., United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir. 1998) (77 day delay); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (67 day delay); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (55 day delay); *Spencer*, 836 F.2d at

---

[6] Anderson filed a *pro se* motion to withdraw his guilty pleas on October 21, 2014.  This motion was stricken, however, because at the time Anderson filed the motion, he was represented by counsel.  The Court struck his *pro se* motion because there is no right to hybrid representation; however, the Court has since appointed Anderson new counsel, who in turn filed the instant motion to withdraw his guilty pleas.

239 (35 day delay).  Specifically, the Sixth Circuit has held that an unjustified 75-day alone would support denial of a motion to withdraw a guilty plea.  *United States v. Valdez*, 362 F.3d 903, 912 (6th Cir. 2004).  This factor weighs strongly against permitting withdrawal, absent a determination that the delay was justified.

## B.

The next factor concerns whether any delay in Anderson's filing of the motion to withdraw his guilty pleas is justified.  Anderson does not offer any explanation for such a substantial delay in moving to withdraw his guilty pleas.  The most likely and plausible explanation for the delay is that Anderson was displeased with the initial PSR prepared by the probation office reflecting the calculation of his advisory guidelines range, 360 months to life.

## C.

The next factor concerns the circumstances underlying the entry of the guilty pleas. Anderson's argument for this factor can be broken down into three separate strands: (1) First, Anderson takes issue with the fact that Mr. Escobedo advised that, if he accepted the plea, his sentencing guidelines would be 188 to 235 months' imprisonment; (2) second, he contends that, regardless of the guidelines range, either trial counsel or the case agent or both promised Anderson that he would receive only ten years' imprisonment; and (3) third, he argues that because the three-point reduction promised by the Government did not actually result in a lower sentencing range, the Government's promise was illusory.  The Court will examine each in turn.

### i.

First, Anderson claims that he detrimentally relied on trial counsel's erroneous estimation that his sentencing guidelines would be between 188 and 235 months' imprisonment if he pleaded guilty.[7]  Courts generally evaluate this type of argument under a rubric analyzing whether a

---

[7] The 188-235 month range appears to have originated from the second Rule 11 agreement that the Government offered Anderson before trial.  At the October 30, 2015 hearing, Anderson testified that Mr. Escobedo told him that

defendant entered into a plea agreement knowingly and intelligently. A guilty plea is invalid if it is not entered knowingly, voluntarily, and intelligently by the defendant. *Dixon*, 479 F.3d at 435 (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). "[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *United States v. McCreary—Redd*, 475 F.3d 718, 723 (6th Cir. 2007) (citations omitted). For a guilty plea to be valid, the district court must make sure that the defendant understands "any maximum possible penalty, including imprisonment, fine, and term of supervised release." Fed. R. Crim. P. 11(b)(1)(H).

Even crediting Anderson's allegation that Mr. Escobedo predicted his guideline range at 188-235 months'—an allegation disputed by Mr. Escobedo—his argument is unavailing. The Sixth Circuit has held that plea agreements and waivers were knowingly and intelligently entered even when a defendant was unaware how severely he would be sentenced. *See, e.g., United States v. Stephens*, 906 F.2d 251, 254 (6th Cir. 1990) ("Because appellant was fully aware that his ultimate sentence under the agreement was subject to later determination by the court based on a variety of factors at the time he entered into it, the fact that he did not know specifically that he would be subject to sentencing in [a particular] range does not mean that it was entered into unknowingly and unintelligently."). Here, Anderson knew that he faced a maximum sentence of life imprisonment, as evidenced by his signature on the acknowledgments of the indictment and superseding indictment.

Moreover, to the extent that Anderson asserts that he received ineffective assistance of counsel based on trial counsel's miscalculation, the Sixth Circuit has rejected that argument as well. "It is well settled that a defense attorney's erroneous calculation and prediction of the sentencing guidelines is not a basis for setting aside a guilty plea." *United States v. Hicks*, 4 F.3d

---

was the sentence he could be facing under the United States Sentencing Guidelines. In contrast, at the April 27, 2015 motion hearing, Mr. Escobedo testified that he did not tell Anderson that his guidelines range would be 188-235.

1358, 1363 n.3 (6th Cir. 1993); *see also Stephens*, 906 F.2d at 253 ("The mere fact that an attorney incorrectly estimates the sentence of a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement . . . .").  This is true because, when the district court properly conducts a Rule 11 colloquy and informs the defendant of the maximum penalty he may receive, he simply cannot then argue that an attorney's inaccurate prediction caused prejudice.  *See United States v. Elliott*, 2011 WL 1793384, at *5 (E.D. Ky. May 11, 2011); *Gleason v. United States*, 2010 U.S. Dist. LEXIS 39226, at *36-38 (S.D. Ohio Apr. 20, 2010) ("The rationale is that the Rule 11 colloquy, which advises the defendant of the minimum and maximum imprisonment range under the statute and provides other necessary information about the Guidelines sentencing process, eliminates any arguable prejudice from an earlier estimate by counsel.") (citing *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999).

Here, the Court conducted a plea colloquy that conformed with Federal Rule of Criminal Procedure 11.  During the plea hearing, the Court identified each charge and the associated sentencing guideline range for each charge.  Specifically, with respect to Count 1, the Court explained that Anderson faced a possible life sentence:

| The Court: | My understanding is that you will be entering a plea to the five charged counts that apply to you, Mr. Anderson. |
| --- | --- |
| | They include Count 1, which is the offense of conspiracy to possess with the intent to distribute and to distribute cocaine base, cocaine and heroin on or about March 11 of 2013. *The offense is punishable by a minimum term in custody of ten years and up to lifetime custody.*  The Court is to impose a fine of up to $10,000,000. . . . . |
| | Mr. Anderson— |
| Anderson: | Yes, sir. |
| The Court: | I've reviewed the mandatory—I've reviewed the sentencing implications with respect to each of those five counts.  Were you aware of the fact that those are the statutory potential consequences associated with those offenses? |

- 14 -

| Anderson: | Yes, each of them with the maximum penalties, right? |
| The Court: | Yes. |
| Anderson: | Yes, sir. |

Guilty Plea 8, 10 (emphasis added).[8]

Moreover, at the plea hearing, the Government explained that it "will seek enhancements as an upward adjustment for role in the offense and for obstruction of justice as part of the defendant's sentence . . . ." Guilty Plea 12. Anderson then agreed that the Government's recitation was accurate. *Id*. at 15.

The Court made it clear to Anderson at the plea hearing that his sentence would be determined  by the Court, that the sentencing guidelines were advisory, that the Court would decide the ultimate sentence—which could be a life term of imprisonment, and that counsel's estimate of the advisory guidelines range was not binding on the Court. Therefore, the Rule 11 plea colloquy cured any harm that trial counsel's inaccurate estimation of the guideline range could have caused Anderson.

**ii.**

---

[8] At the beginning of the plea hearing, Anderson took an oath that he would provide truthful testimony:

| The Court: | Do you solemnly swear that the testimony that you are about to provide will be the truth, the whole truth and nothing but the truth so help you God? |
| Anderson: | Yes, sir. |
| The Court: | Could you—we're going to be asking you a number of questions during the course of the hearing.  It will be important that you provide us truthful and accurate information.  Do you understand that? |
| Anderson: | Yes, sir. |
| The Court: | You understand that if you were to provide us materially false information, you could become separately responsible for the crime of perjury, correct? |
| Anderson: | Yes, sir. |

Guilty Plea 6.

In general, when the Court follows the requirements of Rule 11, as it did here, "the defendant is bound by his statements in response to the Court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)).  To find otherwise would make every plea subject to attack and render the oral responses meaningless. *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992).

Anderson also claims that he was led to believe "that the officer in charge of the case had talked with his attorney [and] that they were discussing the possibility of just doing [a] 10 year sentence in this matter." Mot. Withdraw ¶ 6. In other words, Anderson claims that he was explicitly promised by Mr. Escobedo that he would receive only 10 years' imprisonment, regardless of the guidelines range.

But this claim is contradicted by his sworn testimony that he had not received any other promises in exchange for his plea. After the Court reviewed the statutory sentencing guidelines for each charge, the Court asked if any person had made any other representations to Anderson about the possible sentence he could receive:

> The Court:    Has anyone offered you anything trying to convince you to enter a guilty plea beyond that which has been described here in the agreement?
>
> Anderson:    No, sir. Nobody has offered me anything.

Guilty Plea 16. At no time during the plea hearing did Anderson claim that his attorney or the case agent had promised a lesser sentence.

Moreover, Anderson signed the plea agreement in which he affirms that:

> This agreement is the complete agreement between the parties. This agreement supersedes all other promises, representations, and agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty pleas are entered in court. Thus, *no oral or written promises made by the government to defendant or to the attorney for the defendant before defendant pleads guilty are binding* except to the extent they have been explicitly incorporated into this agreement.

Plea and Waiver of Rights 3 (emphasis added). In other words, Anderson's sworn testimony and the signed plea agreement flatly contradict his claims that he was promised that he would receive only 10 years.

At the April 27, 2015 motion hearing, Anderson testified that he did not reveal the ten-year promise on the record because Mr. Escobedo told him to keep it secret. His testimony was "incredible" and not credited in any way.

- 16 -

**iii.**

Finally, Anderson claims that the plea was illusory because the "benefit" he received—a three-point reduction—had absolutely no effect on his advisory guidelines range.  That is, the PSR concluded that, even with a three-point reduction, Anderson's guideline range was 360 months to life—the same sentencing range Anderson would have received if he had been convicted on all charges at trial.

An illusory plea bargain is one that offers no real benefit to the defendant.  *United States v. Randolph*, 230 F.3d 243, 250-51 (6th Cir. 2000).  In contrast, a plea is not illusory where the defendant "received a real, tangible benefit in consideration for the plea."  *Jones v. Prelesnik*, 2011 WL 1429206, at *8 (E.D. Mich. Apr. 14, 2011) (citing *Daniel v. Overton*, 845 F. Supp. 1170, 1174 (E.D. Mich. 1994)).  Illusory representations made by the prosecutor to induce a defendant to waive his right to trial and enter a guilty plea have been found to constitute coercion justifying the withdrawal of a guilty plea.  *Spearman v. United States*, 860 F. Supp. 1234, 1249 (E.D. Mich. 1994).

Although the initial PSR reflected a guideline range of 360 months to life, the PSR was later amended to reflect the most recent changes to the United States Sentencing Guidelines.  In the amended PSR, Anderson's guideline range was calculated at 292-365 months' imprisonment.  Accordingly, Anderson will receive the contemplated benefit to pleading guilty: the three-point reduction for acceptance of responsibility reduced his sentencing guideline range to 292-365 months instead of 360 months to life.   The plea agreement was not illusory, and this factor does not weigh in favor of withdrawal.

**D.**

The third factor is whether the defendant has asserted or maintained his innocence.  Courts have taken into account the absence of a defendant's vigorous and repeated protestations of

innocence.  *Alexander*, 948 F.2d at 1004 (citing *United States v. Saft*, 558 F.2d 1073 (2d. Cir. 1977)).

Anderson has not asserted his innocence, and at the plea hearing he explained that he was pleading guilty because he was responsible for the offenses charged:

| | |
|---|---|
| The Court: | Is your intent in entering a guilty plea to do so because you do believe you are responsible for the offenses? |
| Anderson: | Yes, sir. |

Guilty Plea 16-17.  Anderson then explained the factual bases for and his role in each of the five charges he was pleading guilty to.

But despite the admission, the Court almost did not accept Anderson's guilty plea because he initially did not acknowledge the amount of cocaine base involved in the conspiracy.  It was only after Anderson admitted to the amount that the Court accepted his plea:

| | |
|---|---|
| Anderson: | Now if they're saying it's 280 grams or more of that, then I—I can't—I can't—I'm—I'm going on the relevant conduct of what I did.  And I'm not disputing the transport of drugs.  It's more of the quantity and where they are trying to put me at during those times.  This is my concern.  I'm not— I'm not at all trying to, you know, push—push it on somebody else.  I'm saying that if I'm a part of something, just make it relevant to what I'm a part of. |
| The Court: | I understand your point. |
| AUSA: | We are referring just to the period that he was involved.  During that time that he was involved, that there was 280 grams or more of cocaine base. |
| The Court: | [Anderson] is unwilling to say that.  He doesn't think it's accurate.  Have a seat.  If the bailiff will recall the jury, please. |
| Defense Counsel: | Is the Court not going to accept the plea? Is that— |
| The Court: | One of the requirements at this stage, based on the way I'm reading the agreement, is that he has to acknowledge that the— |

- 18 -

| | |
|---|---|
| Anderson: | Oh, no. Oh, no.  We don't have to do all that. |
| The Court: | We are not trying to pull your arm here.  We're trying to make— |
| Anderson: | I'm not about to do life over this, so—I'm not about to do life over this. |
| The Court: | I want to be sure that you're confortable in representing that the conspiracy— |
| Anderson: | I know. |
| The Court: | —encompassed the involvement of 280 grams of crack cocaine. |
| Anderson: | I understand. |
| The Court: | And do you agree? |
| Anderson: | I agree. |
| The Court: | And 500 grams of powder cocaine. |
| Anderson: | I agree. |
| The Court: | And a kilogram of heroin. |
| Anderson: | I agree. |

Guilty Plea 24-25.   Although Anderson was initially reluctant to acknowledge the drug amounts charged, he eventually admitted the amounts.

Nowhere in his motion to withdraw his guilty plea does Anderson claim that he is innocent of the charges.  He does not even contend that the drug amounts he pleaded to are incorrect.  Instead, he asserts that he was misled in the calculation of his sentence and the alleged promises of a 10 year sentence.  Because Anderson has not previously asserted his innocence and has not done so now, this factor weighs against permitting him to withdraw his plea.

### E.

The next factor to be considered is the defendant's nature and background.  A defendant's intelligence, sophistication, and understanding of the plea are relevant to a court's analysis of this

factor. *Ellis*, 470 F.3d at 285 (finding that this factor supported denial of the defendant's motion to withdraw his plea because defendant was highly educated and sophisticated and understood what he was doing when he entered his plea); *see also United States v. Quinlan*, 473 F.3d 273, 278 (6th Cir. 2007) (defendant's "background . . . confirms that there is no reason to think that he would have misunderstood the plea agreement or the consequences of signing it.").

Anderson, a high school graduate, completed two years of college at Henry Ford Community College and has taken some criminal justice courses. Guilty Plea 7. The Government alleges that Anderson was involved in "complex identity theft and tax fraud activities" thus demonstrating his intelligence and sophistication. Anderson's counsel stated that he was satisfied that Anderson is capable of entering a knowing plea, and the Court noted that "I too have had the chance to observe [Anderson] on numerous occasions over the last several weeks and before that. I too am satisfied that he is capable of entering a knowing plea." *Id*. At the time of the plea hearing, Anderson testified that he was not under the influence of any medications, drugs, alcoholic beverages, or anything else that would affect his judgment. Guilty Plea 7.

Nothing in the record establishes any impaired mental capacity, intellectual deficits, or emotional problems sufficient to cause defendant to be confused or to be unable to understand the nature of the plea hearing, his plea agreement, or his entry of guilty pleas. This factor does not support withdrawal of the guilty pleas.

## F.

A defendant's prior experience with the criminal justice system must also be considered. With this factor, it is relevant whether the defendant is "a novice" to or is "familiar with" the criminal justice system. *Spencer*, 836 F.2d at 240 (quoting *United States v. Kirkland*, 578 F.2d 170, 171-72 (6th Cir. 1978)). In *United States v. Dixon* and *United States v. Durham*, the Sixth Circuit found that a defendant's one prior state conviction constituted enough experience with the criminal justice system to weigh against withdrawal. *Dixon*, 479 F.3d at 437; *Durham*, 178 F.3d

- 20 -

at 799; *but see Ellis*, 470 F.3d at 285 (finding that defendant's one state court conviction for a minor offense did not constitute extensive experience with the criminal justice system).

The Government represents that Anderson has 27 convictions that began at age 18.  Thus, Anderson's overall experience with the criminal justice system would be extensive.  He could certainly be considered familiar with the criminal justice system, and this factor would weigh against withdrawal of the pleas.

### G.

The final factor to consider is the prejudice, if any, to the Government.  Prejudice to the government can include wasted government resources, *United States v. Carr*, 740 F.2d 339, 345-46 (5th Cir. 1984).  Prejudice can also be shown if witnesses are no longer available or that the delay from defendant's withdrawn guilty plea harms the witnesses' ability or incentive to testify truthfully and accurately.  *Valdez*, 362 F.3d at 913; *United States v. Mise*, 27 F. App'x 408, 414 (2001) (finding prejudice to the government when cooperating defendants had already been sentenced and therefore did not have the same incentive to cooperate with the government).

Anderson was the last defendant in the case to enter guilty pleas and he did so after six days of trial.  Since Anderson entered his guilty pleas, his other co-defendants in the conspiracy have been convicted and sentenced.  For example, Co-Defendant Tradvis Demarr Williams, testified at trial that he had sold drugs with Anderson:

| Q: | What was your relationship to Paul Anderson and Darryl Atkins in this business? |
|---|---|
| Williams: | We all sold—we all sold together.  We made money together, you know. |
| Q: | Selling drugs? |
| Williams: | Yeah. |

Transcript at 15.   In exchange for testifying against Anderson, Williams received a plea agreement that reduced his guideline sentence from a possible life sentence to 262-327 months.

About three months after Williams testified against Anderson at trial, Williams was sentenced to 270 months' imprisonment—within the guideline range set by his plea agreement. Because Williams has already been sentenced and received the benefit of his plea agreement, he no longer has as big an interest in cooperating with the Government and testifying against Anderson. Indeed, all of Anderson's codefendants are now serving terms of imprisonment in the Bureau of Prisons' custody and have lost any real incentive to cooperate with the government. The increased cost to the government for preparing for a second trial and obtaining the return of potential witnesses to this district would cause the government to incur extra time and duplicative expenses which would otherwise have been unnecessary but for Anderson's decision to plead guilty and his subsequent attempt to withdraw the guilty pleas. The Government would be prejudiced if the Court were to grant this motion.

**III.**

In summary, every factor weighs in favor of denying Anderson's motion to withdraw his guilty pleas. Therefore, Anderson has not demonstrated a fair and just reason to withdraw his guilty plea.

Accordingly, it is **ORDERED** that Defendant Paul Allen Anderson's Motion to Withdraw his Guilty Plea (ECF No. 127) is **DENIED**.


s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: May 27, 2015

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 27, 2015.

s/Karri Sandusky
Karri Sandusky, Acting Case Manager