UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,           Case No. 1:13-cr-20704-2

v.           Honorable Thomas L. Ludington
           United States District Judge
PAUL ALLEN ANDERSON,

           Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE WITH PREJUDICE AND DENYING DEFENDANT'S MOTION TO APPOINT COUNSEL AS MOOT**

In September 2015, Defendant Paul Anderson was sentenced to 292 months of imprisonment after pleading guilty to various drug distribution and possession offenses. Nearly ten years after his sentence, Defendant seeks compassionate release. But Defendant has not fully exhausted his administrative remedies, nor has he shown that extraordinary and compelling reasons warrant his release. And, even if he had, a *de novo* review of the 18 U.S.C. § 3553 sentencing factors reveals that Defendant is not entitled to release. Accordingly, Defendant's Motion for Compassionate Release will be denied with prejudice, and his ancillary Motion to Appoint Counsel will be denied as moot.

I.

In September 2013, the Government charged Defendant Paul Anderson and three Codefendants with various offenses related to an alleged conspiracy to sell cocaine base, cocaine, and heroin throughout Michigan. ECF No. 19. In March 2014, two of Defendant Anderson's Codefendants pleaded guilty to a conspiracy charge. *See* ECF Nos. 53; 59. And, after the

Government filed a Superseding Indictment in April 2014, Defendant Anderson's remaining Codefendant pleaded guilty to one count of possession. *See* ECF Nos. 73; 75 at PageID.287.

The Government accurately recites Defendant Anderson's alleged offense conduct, which formed the factual basis for the Superseding Indictment:

> In January 2012, [Defendant] joined a drug conspiracy. He was thereafter incarcerated for several months for a parole violation and resumed his involvement in October 2012. From October 2012 through March 11, 2013, [Defendant] and his codefendant, Tradvis Williams, ran a drug distribution group in the Cheboygan and Petoskey, Michigan, areas. [Defendant] was one of the leaders of the organization, aided by several other individuals. [Defendant] and other individuals in the group would drive to Detroit an average of three times a week to obtain ounces each of heroin, cocaine powder, and crack cocaine. They would then distribute the drugs to intermediaries, who would sell it to end users. Members of the group would send or receive wire transfers to pay for the drugs or to obtain the profits. [Defendant] would also rent the vehicles used by members of the group. Authorities conducted several controlled buys of cocaine, cocaine base, and heroin from [Defendant] and his associates throughout this investigation. Search warrants resulted in the seizure of quantities of cocaine, cocaine base, heroin, cash, and drug distribution paraphernalia. During the time [Defendant] was part of the conspiracy, the conspiracy involved approximately 3.57 kilograms of heroin, 4.97 kilograms of cocaine and 4.97 kilograms of cocaine base. These quantities were conservative estimates.

ECF No. 218 at PageID.2585; *see also* PSR ¶¶ 10–24. Accordingly, the April 2014 Superseding Indictment charged Defendant Anderson with the following:

| COUNT | OFFENSE | STATUTE |
|---|---|---|
| I | Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine Base, Cocaine, and Heroin | 21 U.S.C. §§ 846 and 841(a)(1) |
| II | Possession with intent to Distribute Cocaine Base / Aiding and Abetting | 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2 |
| V | Distribution of Heroin | 21 U.S.C. §§ 841(a)(1), (b)(1)(C) |
| VI | Distribution of Cocaine | 21 U.S.C. §§ 841(a)(1), (b)(1)(C) |
| VIII | Use of a Communication Facility in the Commission of a Felony Under the Controlled Substances Act | 21 U.S.C. § 843(b) |

*See* ECF No. 68. Defendant Anderson went to trial in June 2014 but decided to plead guilty to all charges after seven days of proofs.[1] *See* ECF No. 92.

As noted in the Rule 11 Plea Agreement, Defendant understood that the Government would seek sentencing enhancements for his leadership role in the conspiracy and his evident obstruction of justice throughout pretrial proceedings and trial itself. ECF No. 92 at PageID.349–50. As reflected in Defendant's Final Presentence Investigation Report (PSR), Defendant obstructed justice in at least three ways. First, Defendant offered to pay one of the Government's witnesses to prevent her testimony. PSR ¶ 26. Second, Defendant threatened another Government witness—and one of Defendant's alleged coconspirators—with bodily harm if he testified. *Id.* Third, Defendant falsified evidence by forging a letter from one of his Codefendants that stated Defendant was not involved in the drug conspiracy. *Id.*

Defendant's offense level was calculated as follows:

- Base Offense Level                                                                **34**
- Positive Adjustment for Leadership Role, U.S.S.G. § 3B1.1(c)                      **+2**
- Positive Adjustment for Obstruction of Justice, U.S.S.G. § 3C1.1                  **+2**
- Negative Adjustment for Accepting Responsibility, U.S.S.G. § 3E1.1(a)             **-2**
- Negative Adjustment for Accepting Responsibility, U.S.S.G § 3E1.1(b)              **-1**
- **Total Offense Level:**                                                          **35**

PSR ¶¶ 28–38. Given Defendant's prior convictions, and a two-point addition for committing the instance offense while serving a sentence for another, U.S.S.G. § 4A1.1(d), Defendant's criminal history score was 21, placing him within criminal history category VI. PSR ¶¶ 66–68. Thus, the United States Sentencing Guidelines recommended Defendant's sentence fall within the range of 292-365 months of imprisonment. PSR ¶ 99.

---

[1] Defendant later sought to withdraw his guilty plea, ECF No. 127, but this Court denied Defendant's motion in May 2015 because Defendant had "not demonstrated a fair and just reason" to withdraw his knowing, voluntary, and intelligent plea. *See* ECF No. 147.

Accordingly, on June 11, 2015, this Court sentenced Defendant at the very bottom of this Guidelines range to 292 months of total imprisonment, followed by five years of supervised release.[2] ECF No. 151 at PageID.1121–22.

Defendant directly appealed his conviction, ECF No. 152, but the Sixth Circuit granted the Government's motion to dismiss, holding Defendant knowingly waived his right to appeal under the terms of his Rule 11 Plea Agreement. ECF No. 173; *see also* ECF No. 92 at PageID.349–50 ("Defendant understands that defendants generally have the right to attack their convictions and sentences . . . however, [D]efendant knowingly and voluntarily waives those rights and agrees not to contest his convictions or sentences in any post-conviction proceeding, including—but not limited to—any proceeding under 28 U.S.C. § 2255").

In September 2016, contrary to the terms of his Plea Agreement, Defendant filed a motion to vacate his conviction under 28 U.S.C. § 2255. ECF No. 185. But this Court denied that motion, both because Defendant waived the right to collaterally attack his conviction, and because his claims of ineffective assistance of counsel were without merit. *See* ECF No. 201. This Court declined to issue a certificate of appealability, *id.* at PageID.2420, but Defendant appealed. ECF No. 203. The Sixth Circuit affirmed, holding "[r]easonable jurists would not debate the . . . determination that [Defendant]'s motion to vacate is barred by the terms of his plea agreement . . . which included a waiver of his right to collaterally attack his conviction and sentence. And none of the arguments raised by [Defendant] undermine the validity of his guilty plea or" waiver. ECF

---

[2] Specifically, Defendant was sentenced to (1) 292 months of imprisonment on Count I; (2) 292 months of imprisonment on Count II; (3) 240 months of imprisonment on Count V; (4) 240 months of imprisonment on Count VI; and (5) 48 months of imprisonment on Count VIII—all to be served concurrently. ECF No. 151 at PageID.1121. Similarly, Defendant was sentenced to (1) five years of supervised release on Count I; (2) three years of supervised release on each of Counts II, V, and VI; and (3) one year of supervised release on Count VII—all to be served concurrently. *Id.* at PageID.1122.

No. 206 at PageID.2429–30. The United States Supreme Court denied Defendant's petition for writ of certiorari. ECF No. 208.

Defendant tried to collaterally attack his sentence for a second time four years later. In September 2020, Defendant filed a *pro se* "emergency" motion for compassionate release under 18 U.S.C. § 3582, citing the COVID-19 pandemic and his need to care for his incapacitated father as "extraordinary and compelling reasons" warranting his release. *See generally* ECF No. 210. This Court denied Defendant's September 2020 Motion for Compassionate Release with prejudice because (1) "the § 3553 [sentencing] factors indicate[d] that Defendant is not entitled to a sentence reduction"; (2) COVID-19 was not an extraordinary and compelling reason to release Defendant, because Defendant was not suffering from any "actual medical condition or terminal illness"; and (3) Defendant's need to care for his father could not warrant his release, because the Sentencing Commission's policy statements at the time did not consider a defendant's need to care for a parent as sufficiently "extraordinary and compelling." *See generally* ECF No. 212.

On June 12, 2024, nearly four years after this Court denied his *first* motion for compassionate release, Defendant filed a second Motion for Compassionate Release under 18 U.S.C. § 3582. ECF No. 216. And, one month later, Defendant filed an ancillary Motion to Appoint Counsel to assist in supporting Defendant's Motion for Compassionate Release, ECF No. 216. ECF No. 220.

## II.

A sentence is a final judgment, and district courts generally lack the authority to modify sentences after they are imposed. 18 U.S.C. § 3582(b)–(c). Yet 18 U.S.C § 3582(c)(1)(A) provides an exception to this "rule of finality" prohibiting sentence modification "in limited circumstances,"

known broadly as "compassionate release." *United States v. Lee*, No. 18-20198, 2024 WL 1508826 (E.D. Mich. Apr. 5, 2024) (citing *United States v. Hunter*, 12 F.4th 555, 561, 569 (6th Cir. 2021)).

In assessing motions for compassionate release, Courts within the Sixth Circuit proceed with a threshold question, followed by a three-tiered analysis.

As a threshold issue, reviewing courts must assess whether the defendant has "satisfied the administrative exhaustion requirement of the First Step Act." *United States v. Allison*, No. 2:21-CR-20436-TGB-EAS, 2024 WL 3012780, at *2 (E.D. Mich. June 14, 2024); *see also* 18 U.S.C. § 3582(c)(1)(A) (noting courts can review defendant-filed motions for compassionate release only once defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier").

If a defendant exhausted his administrative remedies, reviewing courts proceed to assess whether the defendant has shown both (1) "extraordinary and compelling reasons" which warrant a sentence reduction and (2) that the requested reduction is "consistent with" applicable United States Sentencing Commission policy statements. *See* 18 U.S.C. § 3582(c)(1)(A). Notably, "absent 'an applicable policy statement for inmate-filed compassionate-release motions, district courts have [the] discretion to define 'extraordinary and compelling' on their own initiative.'" *Allison*, 2024 WL 3012780, at *2 (quoting *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021)). If satisfied that extraordinary and compelling reasons warrant a reduced sentence, and that a reduction is consistent with applicable policy statements, reviewing courts (3) turn to the factors promulgated in 18 U.S.C. § 3553(a) to determine whether the reduction authorized by statute is "warranted in whole or in part under the particular circumstances of the case." *Dillon v. United States*, 560 U.S. 817, 827 (2010). Each facet of this analysis will be addressed in turn.

### III.

### A. Exhaustion

Defendant's Motion for Compassionate Release fails at the first step because Defendant has not shown that he fully exhausted his administrative remedies. At some point before April 1, 2024, Defendant requested the BOP file a motion for compassionate release on his behalf because he needed to care for his incapacitated father. *See* ECF No. 216 at PageID.2543. But the warden of Defendant's correctional facility denied Defendant's request because Defendant did not "provide[] any documentation" to support his claims. *Id.* The warden's response noted that Defendant could appeal "via the administrative remedy process by submitting [his] concerns on the appropriate form (BP-9) within 20 days." *Id.* It seems Defendant filed the initial internal appeal but was denied relief on April 25, 2024. *Id.* at PageID.2544. However, the denial letter advised Defendant:

> If you are not satisfied with this decision, you may appeal to the Regional Director at: Bureau of Prisons, North Central Regional Office, 400 State Avenue, Tower II, 8th Floor, Kansas City, Kansas 66101. Your appeal must be received . . . within 20 days of the date of this response.

*Id.* Defendant does not indicate whether he pursued this next step of his administrative appeal. *See generally* ECF No. 216. But this next step is necessary for full exhaustion. 18 U.S.C. § 3582(c)(1)(A) (allowing court consideration of a defendant's motion for compassionate release only "after the defendant has fully exhausted *all* administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" (emphasis added)).

And, even if Defendant fully availed himself of all administrative appeals, one of the two issues presented in Defendant's Motion for Compassionate Release is not exhausted, because it was never presented to the BOP. As explained below, Defendant argues two "extraordinary and compelling reasons" warrant his release. First, Defendant argues that new "prosecutorial

guidelines" "treat powder-and-crack-cocaine crimes similarly," such that Defendant is currently serving "an unduly long and unfair crack sentence." ECF No. 216 at PageID.2536. Second, Defendant argues he needs to care for his "legally incapacitated" father. *Id.* at 2537–38 (emphasis omitted). But only the latter argument was presented to the BOP. *See id.* at PageID.2543–44. So, the former argument has not been exhausted. *See United States v. Asmar*, 465 F. Supp. 3d 716, 719 (E.D. Mich. 2020) ("Where the factual basis in the administrative request and the motion before the court are different, a defendant does not satisfy the exhaustion requirement because he does not give the BOP an opportunity to act on the request before Defendant brings his request to the courts."); *United States v. Mogavero*, No. 15-00074, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) ("Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden."); *but see United States v. Johnson*, No. 11-20493, 2021 WL 822495, at *3 (E.D. Mich. Mar. 4, 2021) (finding defendant exhausted administrative remedies because, although his motion and request cited different medical conditions, both concerned COVID-19 complications and were sufficiently similar).

At most, Defendant has not exhausted his administrative remedies. At least, Defendant has not exhausted his "unusually long sentence" claim. Even so, for completeness, and to the extent courts "may consider arguments not presented to the BOP," *United States v. Hopkins*, 594 F. Supp. 3d 852, 857 (E.D. Mich. 2022), *aff'd*, No. 22-1170, 2022 WL 18955859 (6th Cir. Oct. 6, 2022), this Court will address Defendants' Motion on the merits.

### B. Extraordinary & Compelling Reasons

Assuming Defendant exhausted his administrative remedies, the Court turns to whether Defendant has shown "extraordinary and compelling reasons" that warrant his release. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020). The Court must

also find that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Historically, federal courts have had significant discretion to define "extraordinary and compelling reasons." *United States v. Allison*, No. 2:21-CR-20436-TGB-EAS, 2024 WL 3012780, at *2 (E.D. Mich. June 14, 2024). But on November 1, 2023, the United States Sentencing Commission amended its Policy Statement in U.S.S.G. § 1B1.13 and expanded its interpretation of what classifies as "extraordinary and compelling reasons" to warrant sentence reduction. *Id.* Two subsections are relevant to Defendant's Motion.

First, § 1B1.13(b)(6)—entitled "Unusually Long Sentence"—provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

Second, in § 1B1.13(b)(3)—entitled "Family Circumstances of the Defendant"—the Sentencing Commission noted that extraordinary and compelling reasons warranting a defendant's compassionate release may exist in any of the following circumstances:

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3).

Defendant seizes on both subsections, advancing two separate "extraordinary and compelling reasons" that he maintains warrant his release. Each reason will be addressed in turn.

### 1. Unusually Long Sentence

Defendant first argues, under § 1B1.13(b)(6), that he is serving an "unduly long and unfair crack sentence based in [an] unjust disparity." ECF No. 216 at PageID.2536. Not so.

Assuming *arguendo* that § 1B1.13(b)(6) provides valid policy guidance,[3] its express terms limit compassionate release to situations in which (1) a defendant has served 10 years of their

---

[3] The Government argues, as a threshold matter, that the Sentencing Commission promulgated this *specific subsection*—as opposed to any other "extraordinary and compelling" circumstance identified in § 1B1.13—in excess of its Congressionally-delegated authority and in violation of the separation of powers. ECF No. 218 at PageID.2598–616. These arguments have been raised in federal courts throughout the county since § 1B1.13(b)(6)'s promulgation, and courts have reached contrary conclusions. *See, e.g.*, *United States v. Rutherford*, 120 F.4th 360, 376 (3d Cir. 2024) (finding Section 1B1.13(b)(6) exceeded the Sentencing Commission's congressionally delegated authority); *United States v. McHenry*, No. 1:93 CR 84, 2024 WL 1363448 (N.D. Ohio Mar. 29, 2024) (finding no "separation of powers concern" and noting that at least one of two interpretations are not in excess of statutory authority); *United States v. Ware*, 720 F. Supp. 3d 1351 (N.D. Ga. 2024) (concluding "the Sentencing Commission lawfully exercised its authority in defining extraordinary and compelling reasons for compassionate release in Section 1B1.13(b)(6)"); *United States v. O'Neill*, No. 97-CR-98-1-JPS-JPS, 2024 WL 2369102 (E.D. Wis. May 23, 2024) (concluding "§1B1.13(b)(6) is manifestly contrary to the statutory scheme set forth in 994(t) and § 3582(c)(1)(A), and that the Commission exceeded its statutory authority"); *United States v. Fields*, No. 5:12-CR-00002, 2024 WL 4520353 (W.D. Va. Oct. 17, 2024) (finding no separation of powers issue and that the Commission did not promulgate Section 1B1.13(b)(6) in excess of its authority); *United States v. Spradley*, No. 1:98-CR-38-JMS-MJD-1, 2024 WL 1702873, at *5 (S.D. Ind. Apr. 18, 2024) (concluding "the Commission did not extend beyond its authority in promulgating § 1B1.13(b)(6)," and rejecting the Government's separation of powers argument);

- 10 -

prison sentence, (2) the sentence defendant received was "unusually long," (3) applicable law has changed since sentencing, and (4) such "change in the law" produces a gross disparity between the sentence the defendant received and the sentence the defendant would receive under the changed law. *See id.*; *see also United States v. Allen*, No. 1:09-CR-320-TCB, 2024 WL 631609, at *6 (N.D. Ga. Feb. 12, 2024 (noting a gross sentencing disparity, although largely undefined, exists when such disparity is "glaringly noticeable"). Defendant has only satisfied the first condition.

Defendant has not shown that his 292-month sentence is "unusually long." Defendant's sole argument on this point is that "[h]is co-defendants all received less than [ten] years . . . and are now released from incarceration." ECF No. 216 at PageID.2532. But all Codefendants pleaded guilty to only *one* charge, months in advance of trial. *See* ECF Nos. 53 (Codefendant Turcott, conspiracy to possess); 59 (Codefendant Winslow, conspiracy to possess); 75 (Codefendant Williams, possession). In stark contrast, Defendant pleaded guilty to *all five* charges against him, after one week of trial, on the eve of the jury's deliberation. ECF No. 92. And, unlike his Codefendants, Defendant's sentence included a positive adjustment for obstruction of justice. PSR ¶¶ 33. So, although Defendant's sentence was undoubtedly longer than that of his Codefendants, nothing suggests this length was unusual under the circumstances.

More importantly, Defendant has not identified a change in applicable law. Instead, Defendant conclusively argues that new "prosecutorial guidelines" treat "crack-cocaine" and "powder[] cocaine crimes" similarly and that criminal penalties for possession and distribution of

---

*United States v. Moore*, No. CR 14-209-2, 2024 WL 1286935, at *4 (E.D. Pa. Mar. 26, 2024) (agreeing that "the Commission enjoyed the constitutional authority granted by Congress to define extraordinary and compelling reasons" by promulgating § 1B1.13(b)(6)). The Sixth Circuit recently entertained oral argument on these issues in a consolidated case, *United States v. Bricker*, Case No. 24-3286 (6th Cir. Oct. 31, 2024) and a dispositive decision is likely forthcoming. Because of *Bricker*, and because Defendant's motion would be denied on the merits *even assuming* § 1B1.13(b)(6) is valid policy guidance, this Court need not address these issues in this case.

crack, as opposed to powder, cocaine have historically disproportionately targeted Black Americans. ECF No. 216 at PageID.2536. But historical injustices and "prosecutorial guidelines" are not changes in *law* that may warrant compassionate release under § 1B1.13(b)(6).[4] Defendant is not entitled to compassionate release under § 1B1.13(b)(6).

### 2. Family Circumstances

Defendant next argues that he is entitled to compassionate release under § 1B1.13(b)(3) because his father is "legally incapacitated." ECF No. 216 at PageID.2537 (emphasis omitted). The Government does not dispute that Defendant's father is incapacitated. *See* ECF No. 218 at PageID.2617. But § 1B1.13(b)(3) requires more. Specifically, the subsection requires Defendant to show that he is his father's "only available caretaker." U.S.S.G. § 1B1.13(b)(3)(C). Defendant has not made such a showing. Instead, Defendant attaches state court records suggesting that, in February 2019, his father was unsatisfied with his court-appointed legal guardian. *See* ECF No. 216 at PageID.2577. But these records are silent on whether Defendant is the *only available* person to care for his father. Rather, these records and Defendant's PSR suggest that he has two sisters—Tamika Wilkins and Tina Anderson—who may be able to care for Defendant's father. *See id.*; PSR

---

[4] Although not cited by Defendant, there have been several changes to criminal sentencing schemes specifically intended to remedy the historical disparities between crack cocaine and powder cocaine offenses. "Amendment 750" and "Amendment 782" to the Sentencing Guidelines are two of the most prominent changes. Amendment 750—promulgated in November 2011 and later made retroactive—revised the Guidelines' drug quantity conversion table, §2D1.1(c), to adjust downward the base offense levels for offenses involving crack cocaine. *See United States v. Garland*, No. 3:11-CR-08-TAV-DCP-6, 2021 WL 1201663, at *2 (E.D. Tenn. Mar. 30, 2021). Amendment 782—promulgated in November 2014 and later made retroactive—revised the drug-trafficking offenses by reducing the base offense level assigned to the drug quantities described in § 2D1.1 by two levels. *Id.* But these Amendments cannot support Defendant's compassionate release because Defendant was sentenced in 2015 *after* these Amendments went into effect, such that Defendant already received the benefit of these "changes" in the law. Indeed, both the drug quantity conversions and base offense level calculated throughout Defendant's 2015 sentence remain accurate under the most recent version of the Sentencing Guidelines. *Compare* PSR ¶ 29 *with* U.S.S.G. § 2D1.1(c)(3) *and* U.S.S.G. § 2D1.1 cmt. (D) Drug Conversion Tables.

¶ 84. And, in March 2019, the state probate court appointed Defendant's father a new guardian and conservator—Denise Ketchmark. ECF No. 218-4 at PageID.2645–51.

Because Defendant has not substantiated that he is his father's only available caregiver, he has not shown "extraordinary and compelling" reasons to warrant his compassionate release under U.S.S.G. § 1B1.13(b)(3). *See United States v. Evans*, No. 1:21-CR-20086, 2024 EL 4906059 (E.D. Mich., Nov. 27, 2024) (denying compassionate release when defendant did not show that he was his mother's "only available caregiver"); *United States v. Putty*, No. 5:19-CR-2-BJB, 2024 WL 3066913, at *3 (W.D. Ky. June 20, 2024) (denying compassionate release because defendant did not establish that his mother was incapacity, nor that he was his mother's only caregiver).

### C. §3553 Sentencing Factors

Even if Defendant fully exhausted his administrative remedies, and even if he had shown extraordinary and compelling reasons warranted his compassionate release, he would still not be entitled to compassionate release on a *de novo* review of the sentencing factors promulgated in 18 U.S.C. § 3553(a).

The burden is on Defendant to "make a compelling case as to why the . . . § 3553(a) analysis would be different if conducted today." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (presuming that a "district court's initial balancing of the § 3553(a) factors ... [presumably] remains an accurate assessment as to whether those factors justify a sentence reduction."). While this Court must consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a), it need not specifically articulate its analysis of every single § 3553(a) factor if the record as a whole demonstrates that the pertinent factors were taken into account." *United States v. Jones*, 980 F.3d 1098, 1114 (6th Cir. 2020).

The pertinent § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>         . . . .
> (5) any pertinent policy statement—
>     . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

This Court has already sentenced Defendant after considering the § 3553(a) factors. *See* ECF No 158 at PageID.1215–30. This Court's "initial balancing of the § 3553(a) factors during [Defendant's] sentencing" is presumed to "remain[] an accurate assessment as to whether those factors justify a sentence reduction." *United States v. Sherwood*, 986 F.3d 951 (6th Cir. 2021). And Defendant has not demonstrated any flaw in this Court's analysis.

The serious nature of Defendant's offense can hardly be overstated. This is not a simple case of dime-bag drug possession. Defendant conspired to, and did, funnel significant amounts of various dangerous drugs from Detroit to Northern Michigan for further distribution to countless Michiganders, multiple times per week. *See* ECF No. 158 at PageID.1229 ("The specific offense that brings [defendant] here, I think could most fairly be described as furnishing a pipeline of drugs into a portion of the state where they virtually had no competition whatsoever. The amount of drugs and the seriousness of the types of drugs involved is in part what drives this Court's

consideration of the appropriate sentence[.]"). Although nonviolent, Defendant's crime was far from victimless. *United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008) ("Society as a whole is the victim when illegal drugs are being distributed in its communities.") And Defendant's role in the charged conspiracy was far from passive—he instead served as the conspiracy's second-in-command. PSR ¶ 24 (noting that, when Codefendant Williams was "unavailable," Defendant "would take charge" of the conspiracy.)

The seriousness of Defendant's offense is only compounded by his subsequent obstruction. *See* PSR ¶ 26 (noting Defendant attempted to bribe an opposing witness, threatened another opposing witness with bodily harm, and falsified evidence by forging a letter from a Codefendant touting his innocence). Not to mention Defendant's *twenty-seven* prior convictions for offenses such as breaking and entering, larceny, theft, fraud, malicious destruction of property, assaulting/resisting/obstructing a police officer, driving with a suspended license, and operating a vehicle while intoxicated. PSR ¶¶ 39–65.

Defendant argues he is entitled to compassionate release because he has no substance abuse or mental health concerns. ECF No. 216 at PageID.2533, 2539. But this was true when Defendant was sentenced in 2015, and was outweighed by the other § 3553 factors. *See* PSR ¶86–87. Defendant also argues that he has developed several beneficial skills while incarcerated and has invested in his education. ECF No. 216 at PageID.2547–52 (noting Defendant successfully completed courses in money management, day trading, and property investing). While this Court commends Defendant's efforts to improve himself, such efforts are insufficient to warrant his requested 12-year sentence reduction.

Indeed, the twelve years remaining of Defendant's sentence weigh against his compassionate release. Several of the § 3553(a) factors, including the "need to provide just

punishment" and "to reflect the seriousness of the offense," allow courts to consider the "amount of time" that a defendant has served on a sentence when deciding whether to grant a motion for compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) (citing *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) and 18 U.S.C. § 3553(a)(2)(A)). Here, even considering jail credit, Defendant has only served about one-half of his 24-year sentence. *See* ECF No. 218-2 at PageID.2623. The remaining length of Defendant's sentence provides further support for denying his Motion for Compassionate Release.

For these reasons, even if Defendant exhausted his administrative remedies—he did not—and even if Defendant presented sufficient extraordinary and compelling reasons to justify compassionate release—he has not—Defendant has not carried his burden to convince this Court that his § 3553(a) analysis would be different today nor that consideration of the § 3553(a) factors warrant a sentence reduction. Consequently, his Motion for Compassionate Release will be denied, and his subsequent Motion to Appoint Counsel will be denied as moot.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion for Compassionate Release, ECF No. 216, is **DENIED WITH PREJUDICE**.

Further, it is **ORDERED** that Defendant's Motion to Appoint Counsel, ECF No. 220, is **DENIED AS MOOT.**

Dated: December 6, 2024                              s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge